Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open. According to law, God save the United States in this honorable court. Hello, Mr Margaris. Mr Goldman, welcome to the Fifth Circuit. Uh, I'm Jeff Dennis, together with Judge Englehart and Judge Pitts will be your panel today. We have all three cases to be argued. You're first up in the United States of America versus Danny Jewell. Number two, we want to wait one full. So with that, Mr Margaris, I think we'll hear from you first. So thank you, Your Honor. May it please the court counsel. Um, my name is Joey among Garrison. I represent Danny Jewell. Um, put simply, uh, the district court in this case applied a two level enhancement on the basis of unsubstantiated hearsay, amounting to nothing more than a conclusory statement in the PSR, uh, that that didn't have any indicia of reliability. Uh, here what we have is Mr Jewell effectively received methamphetamine from a codefendant named Wise, who then received methamphetamine from a codefendant named Maxwell, who then received methamphetamine from another unknown codefendant are not even codependent unknown person who then received methamphetamine from another unknown person that was supposedly in heard between Mr Jewell, Mr Wise on Mr Jewell never met Miss Maxwell when these transactions occurred, according to PSR, are completely unknown. So we don't know when these transactions occurred whatsoever. Um, all week. And so what we have now what we have now from the government, uh, at at financing is, uh, they they provided some rebuttal to my claim that it was unsubstantiated hearsay and unreliable hearsay. Uh, they provide a, uh, statement that is that is highly redacted, and we don't know who this person is. That says at some point within the last three months or six months, uh, they gave methamphetamine to Miss Maxwell and that their source they don't know anything about their source. Other than that, they were in Mexico. However, let me interrupt you and ask you a question. Page 35 of your brief, you argue that there was no jointly undertaken criminal activity between Maxwell, who acquired the so called imported drug and the appellant who acquired the drug from both Maxwell and another one of Maxwell's distributors. Wise in this particular instance, if they all pled guilty to the charge conspiracy, how do you say that there is no jointly undertaking criminal activity with your client? Yes, Your Honor. My understanding on that is based upon one B. 13 is there has to be some joint agreement between at least Mr Jewel and Miss Maxwell, which here there wasn't. There was a joint agreement between Mr Wise and Mr Jewel to receive methamphetamine. He doesn't. He has never met Maxwell or knew who Maxwell was. Um, and I understand that. But the question I have is, um, the acquisition of the math from Maxwell as part of the conspiracy. How do you simply managed in this master conspiracy to disengage your client from that? I need some help on that because I'm not. I'm not following your accident, and I understand. Maxwell, of course, had other sources of supply, and I'm struggling with that statement in a master conspiracy with everyone having pled guilty. Yes, sir. And based upon my understanding of at least getting to not the conspiracy, we understand within a I understand the conspiracy. Uh, you know, there are multiple co defendants, but here and determining at least, uh, irrelevant conduct of Mr Jewel. My understanding of one B. 13 is there has to be some jointly undertaking criminal activity, and it just is within the scope of that activity and furtherance of that criminal activity and reasonably foreseeable of that activity. It doesn't necessarily say, um, my understanding of that and in the notes that jointly under criminal criminal activity would be that he would have to have some agreement with with Maxwell, not just Mr Wise. And I understand where the court's coming from. However, I think it would be, um, it's we'd be if it was with the court's understanding, we would have where if you just have any sort of agreement with one person, your relevant conduct would be with what everyone else gave that one person. And I don't think that's what let me Let me ask the maybe the inverse of what Judge Hicks is asking. Are you arguing that insofar as the other actors are concerned that their conspiracies were with other people, not not including your client? Wouldn't that have to be the case? I think that would be I think that would be correct. I mean, I I think we're getting into whether or not what can be proved a trial. What can be proved and what is needed as far as relevant conduct? Well, but is it the standard plausible in light of the record as a whole when we talk about, uh, as a sentencing factor, I think it would be if you had some sort of jointly criminal, jointly criminally undertaken activity between Let's say Mr Julie even knew who Maxwell was or met Maxwell. Then I think that would be taken in as relevant conduct. Absolutely. But here you just have one. You have transactions between jewel and wise. The rest is so tenuous as regards to and even if it was from, let's say you want to put that jointly undertaken activity with Miss Maxwell. Let's say that is the case here. We still have two more people where meth is coming from. Maxwell is not the source. She has another source, and that source has another source. So at some point, I don't think the guidelines, especially under one B 13 call for five people later down the lot down the chain. I think I think at some point it has to be cut off with where you want jointly criminal activity. But what you just said your proposition that you I understand your argument. Uh, is there a case that we could look at that would support that with regards to one B 13? I do not have a case I can. I is that necessary? My focus on on this, and, uh, it was only to get to the one B 13 analysis. If I guess two things. One, we don't believe here there was enough evidence or reliability and only based on conclusionary statements. If you want to narrow that down into uncorroborated hearsay, uh, that this meth was not from Mexico or the meth that jewel received at an unknown time in an unknown place, uh, was not from Mexico. There was not enough and issue of reliability in the PSR to show it was from Mexico. Now, in the in the court statement, saying his tentative rulings were, uh, surface says that these drugs are from Mexico. There's really no other analysis. You know, that wasn't my argument. My initial argument here was there is no condition of reliability from the PSR whatsoever or by the government, um, to to show any reliability. This court has said, said and granted in and for warrants what has given kind of a definition of what conclusionary statements are. Um, and it's just, you know, uh, has caused to believe a reliable information is an incredible person that says this. Uh, in warrants, that's not enough. That's bare bones here. It shouldn't be enough either for the government or the PSR just to say we have an unknown source at an unknown time that we deem is credible. Um, but but no reason. And here there's no testimony from an agent to say why that's the case. Um, we just have the drugs must be from Mexico. And so what? What? I guess my first point was if if the courts are going to say that the drugs are from Mexico and this is going to be a strict liability that all methods from Mexico can at least have some. That's where I got to the 1 b 1 3 analysis at least have some analysis because the guidelines don't have notes with regards to this enhancement, like in a weapon enhancement or even the premises enhancement where they have guidance here. There is real no guidance on the guidelines, and that's why it asked other than 1 b 1 3 that that analysis be used. So that's why I that's how I got to that analysis. But I just want to make clear, um, here that the that the drugs were not from Mexico. And if the court looks closely at the PSR and closely at when Mr Jewel was actually arrested, he was arrested in in September of 2000 and 19 was kept in custody that entire time. Um, the interview that the government provided was in November of 2000 and 19. Uh, the source from Mexico would have to be back three months, possibly six months from that. And again, we just don't know any of this information because because it was unknown time, unknown place, and government never is going to be able to say there's no ledgers. There's nothing to corroborate the fact that these drugs could have been from Mexico and distinguishing other cases that the government, uh, put in in their brief. Uh, this isn't well, we're just guessing that they couldn't be from Mexico. Miss Maxwell has another source here on DSO. That other source is a domestic source. It was never proven through the PSR or by the government that that domestic source, uh, that those drugs weren't were from Mexico. So there isn't a possibility that it's not a guest by Mr Jewel's part of my part. It's actually in the record showing that Miss Maxwell had other sources that weren't deemed or proven or shown to be from Mexico. Um, as far as the premises enhancement, I understand that that that argument, um, is while Mr Pipkin, Mr Jewel did, uh, understands that here. Another codependent, Mr Pipkin stated that he bought jewel. He bought methamphetamine from jewel at his residence. However, that residence was not the residence on Henderson, and there's no factors or facts to believe where that actually where that actually occurred. Um, again, this was more of an objection on asking the court just to have someone or the PSR as well to have some analysis as to whether or not, um, it can be proven by an addition of reliability. And it kind of goes to the totality of the circumstances here. Here 11 drug transaction. What took place on Henderson Street? Mr Pipkin has said he went to Second Street. Um, and so we know nothing about Second Street. All we know of facts about Henderson Street. And what we know about Henderson Street is that that's not Mr Jewel's residence. That's his mother's residence. So that's what we know. And so, according to the factors that the, um, the guidelines lay out, I didn't believe that was enough to give him based upon just what the PSR said. Um, lastly, we believe that that Mr Jewel sentence was, uh, substantively and procedurally unreasonable. I understand, and as trial counsel that I did not object after the sentence that it was procedurally unreasonable. However, um, I did put on notice that the court came. The court came out with tentative rulings. Uh, and then, while discussing 35 53 a factors, the court later on, um, interjected. And from the context of what I believe, uh, him to say is, is that he doesn't make the guidelines. And I understand that. But instead, um, the court continued and said he took a note to uphold the law and follow the guidelines that given. So if we were to accept your arguments on both of the two level enhancements and assumed that the guidelines were reformed to subtract those four additional points, how do you get around the 35 53 a in position of sentence? And it's reasonable something to the 35 53 a factors. So we correct your guideline calculations, but we still use 35 53 a as the judge said he was using. Now what? Correct. Well, so, Your Honor, and I understand that I don't believe the court used 35 53 a. And that's why, uh, what we we put in our brief and whether or not it's clear playing air. Uh, I don't believe in order to determine whether it's procedurally reasonable. I don't believe the court took into consideration those factors. We don't know for sure, because the court never gave an explanation period. Even after I told the judge, uh, he's not bound by the guidelines. I did put the court on notice one by filing a memorandum for departure and to letting the court know after he after he explained that these air he follows the guidelines. I did let the court know then that they're merely advisory. So I don't believe the court took into account any of the 35 53 a factors. If he did take into account one, it would be criminal history. He did not take into account the fact that Mr Jewel would be ineffective getting a this sentence along with the parole revocation, which was another 13 years. He did not take into account any of the 35 53 a factors I laid out for Mr Jewel's, um, poor health, substance abuse, being abused as a child, never receiving counseling. None of those factors were were discussed. Those factors were discussed to the court, and none were taken into consideration. And that's I guess that's with regards to, uh, the five G argument, my brief and and, in essence, for his time served, uh, in my brief it and even the objections taken as a whole and its totality in context of the entire sentencing as a whole. It's clear the judge. You made no analysis with the objections, and you made no 35 53 a arguments whatsoever. I understand he doesn't have to say, uh, says complete sentence, but he has to at least give some sort of, um, um, explanation of the sentence. In this instance, then that your position that the court is under an obligation to explicitly address each 35 53 a factor as opposed to simply stating a 275 month sentence flowed from the court's quote consideration of all of the factors set forth in in quote Title 18 U. S. Code Section 35 53 a I'd ask that the court at least take into account some some or all of the factors they don't. The court said he took into account the factors but then never gave an explanation. So I don't know what the court came up with your statement that there's a case holding that he must elaborate and state which factors predominate or is the simply a court's conclusion based on all of the information available to it that it's a 35 53 a decision for a 275 month sentence. Is that a change in the law to require a judge to do that? No, sir. And I will. I understand my time's up. I I recognize the fact that the courts are not can say very little, but I would at least ask for some explanation or some analysis as to why a sentence was given, especially after the court had made comments with regards to they follow that they don't make the guidelines, but they follow the guidelines as written. And so that's why that's what we're asking here. Thank you, Counsel. Mr. Goldman, we're here for you. Good afternoon, Your Honors. Ross Goldman for the United States. I'll start by addressing the premises in the importation enhancements, and I do want to make one top line point here, which is, um, I think where the court ended off with its questioning, even if this court were to conclude for some reason that either or both of these  guidelines enhancements did not meet the merits of the guidelines enhancements. The district court statement at page 171 of the record on appeal makes abundantly clear that any error did not affect the imposition of the 275 month sentence under cases like this court's decision in Metal Guadalupe and Shepard. That statement is itself sufficient to basically moot any merits objection to these guidelines enhancements. And indeed, in Metal Guadalupe, this court didn't even resolve the merits of the guidelines enhancements because it was so clear that any error was harmless. And this kind of statement that again that appears on page 171 is precisely the kind of statement that this court in Shepard encouraged district courts to make in order to obviate these kinds of guidelines appeal claims where it is so clear that the enhancement did not have an effect on the sentence that was I think that's probably the easiest and cleanest way for this court to deal with the enhancements. Turning to the merits of those enhancements, so just a couple of points. The first point is with respect to the premises enhancement, the PSR says at pages 180 and 181 that these drugs transactions, roughly 30 of them took place at Mr. Jewell's residence. Now, my friend on the other side has said that actually the Henderson address was his mother's home and that Mr. Jewell didn't live there. I would point the court to page 195 of the record on appeal, which is the PSR and the PSR there states that the defendant reported the following residential history and says from 2004 to 2019 when he was not incarcerated, he resided at his mother and grandmother's residence located at and then it lists the Henderson address. I think there was ample evidentiary basis for the district court to find by a preponderance of the evidence that the premises enhancement applied. That factual finding is reviewed for clear error only and this court would have to find both no plausible basis in the record to support that finding and a clear and firm conviction that an error was made. The district courts are entitled to rely on statements in the PSR. They bear sufficient indicia of reliability, at least absent a defense claim or evidence showing that the statements are not reliable. On this record, as we outlined in our brief, we think the district court had an ample basis to impose the premises enhancement. Similarly, with the importation enhancement, the PSR makes clear that Karen Maxwell obtained her methamphetamine primarily, primarily obtained her methamphetamine from a source who obtained it from Mexico and the PSR outlines that she was a supplier of methamphetamine for Mr. Jewel. The PSR also says, with respect to a timing issue that my friend on the other side raised, that during the course of the charge conspiracy, Mr. Jewel and two others bought methamphetamine from Ms. Maxwell three times, at least three times. I don't think there's any dispute in this case that the evidence outlining the contours of the conspiracy in this case and the drug transactions relate to the timeframe of the conspiracy that was never disputed below. I didn't understand Mr. Jewel to dispute it in his opening brief on appeal. I would also note for the court that on page 35 of the record on appeal is the factual resume accompanying the guilty plea where Mr. Jewel acknowledges that he and Karen Maxwell, among others, were co-conspirators in the charge defense to which Mr. Jewel pleaded guilty. So I think that's those facts in the PSR coupled with the deferential standards of review that this court applies to the district court's factual findings are more than enough for this court to affirm the enhancements. Again, though, I will remind the court that the issue is sort of irrelevant in this case, given the harmlessness point. A couple other points I want to make for the court. One is in his reply brief, Mr. Jewel, I think was making a claim that the district court procedurally erred by I think Mr. Jewel today or counsel on the other side today seemed to make that point. That point was not raised in his opening brief and so is therefore waived. It's also belied by the record at pages 169 and page 171, the district court twice referred to the quote advisory sentencing guidelines. I don't think there's any dispute in this case that the district court well understood that it had the authority to impose a non-guidelines sentence in this case. On the just a brief word on the section 3553A factors, the law in the circuit is I think quite clear that especially with regard to within guideline sentences, that the explanation requirement is satisfied as long as this court is comfortable that the district court considered the relevant factors and imposed a sentence on the basis of permissible considerations. In this case, as we outline in our brief, Mr. Jewel submitted his motion for a downward variance. The district court referenced that motion and at page 163 gave council the floor to articulate whatever reasons council thought were relevant for a below guideline sentence, whether those were reasons advanced in the downward variance motion or otherwise. After council made his presentation, the district court thanked council, expressed appreciation for council's passionate arguments on fairly read. That is a statement by the district court that the district court heard and understood council's arguments. Then the district court later at pages 171 and 172 of the record on appeal says that in the court's view, an upwards variance sentence might well be warranted in this case, given Mr. Jewel's extensive criminal history. And yet the district court did not impose an upwards variance sentence, but imposed a within guideline sentence. In our view, the reason the district court did not impose the upwards variance sentence that the district court otherwise thought would have been warranted is because of the district court's consideration of the very factors that Mr. Jewel maintains that the district court ignored. I think that is responsive to most of the points that council on the other side made. I'm happy to answer any questions of the court on any issues raised by council or in the briefs. If the court has no further questions, we would ask the court to affirm the judgment of conviction. Thank you, Mr. Goldman. Thank you. Yes, your honor. In some response to the importation enhancement, um, I don't necessarily. Well, one, just because something is included in the PSR does not mean there's some addition of reliability. As this court has said, I think in Zuniga and Elwood, bald conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR. And that's what we have here. Plain and simple. I don't. I don't think it's it's just really disputed that, um, the statements provided by the PSR and even the government are conclusionary or or unfounded hearsay, corroborated hearsay, however you want to say it. It's just it's not necessarily disputed. Uh, and there is in the air here is not harmless. Um, I understand the government's position that the court says, Well, I think there's a reason for an upward departure. He did not upward departed. He kept him within the guidelines. And so even as the government points out in the context of the sentencing and of what the actual sentence was given, I don't believe the court. I don't know how, without explanation, I don't know how the court or this court can say he believed he could he could go above or below the guidelines. Um, I understand this instance of council just because it's a 35 53 a sentence doesn't mean that it can't be within the calculated guideline. Back to my original questions. If you took the four points away and recalculated the guidelines, the 275 months is still applicable under 35 53 a. However, if we sustain that, it simply happens to be a 35 53 a sentence that comport with the guideline calculation given the two plus two point enhancements that were applied. And I guess that's what I'm struggling with, that all things considered, you've still got a 275 month reasonable sentence imposed by the judge, which which and I understand the court. Obviously, we believe that is unreasonable based upon our 35. In essence, from what I understand the court asking or saying, stating is, is that the 275 month sentence, if given, or if I guess the objections were sustained, the court would be allowed under 35 53 a to upward depart. If that were the case, then obviously there would have to be some explanation on why he upward departed. And here we don't have. We have. I could upward depart based upon criminal history, but he doesn't. This court doesn't say, however, because of the other factors, I'm not or I take into consideration those other factors. None of that is present here. And I understand. And so while while judge, you are correct, Your Honor, you're still happen. He would have to give some explanation, and none was was given here. And I understand the court. And, uh, while the sentences within the guidelines require little explanation, more is required. Parties present legitimate reasons to depart from the guidelines. And that's from, uh, Santiago from this court. Um, and that goes back to Rita. Um, and so while while there is little explanation, there has to be something in here taken into context with with what's in the record. Even if I if the government says that I've waived an argument that I believe that the judge believed were sentences were that the guidelines were mandatory, it's in the record. This court can take into account the context of what happened at sentencing with regards to the objections that I made in regards to 35 53 arguments I made. And with little explanation given. Uh, so with that, if the court has any questions, thank you, Counselor. You're very much being taken under the